UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.J., | Case No. 20-cv-03505-JCS |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER PROCEEDINGS** |
| ANDREW SAUL, | |
| Defendant. | |
| | Re: Dkt. Nos. 21, 24 |

## I.    INTRODUCTION

On September 1, 2016, Plaintiff K.J.[1] applied for supplemental security income ("SSI")

under Title XVI of the Social Security Act and disability under Title II of the Social Security Act

alleging disability beginning October 15, 2014.  Admin. Record ("AR," dkt. 15) 132, 317-31.  The

claim was denied initially and upon reconsideration, and Wynne O'Brien-Persons, an

administrative law judge ("ALJ"), held a hearing on April 16, 2019.  AR 38-67 204-09, 213-19.

On May 22, 2019, the ALJ denied Plaintiff's application and on April 7, 2020, the Appeals

Council denied Plaintiff's appeal of the ALJ's decision, making it the final decision of the

Defendant Commissioner of the Social Security Administration ("Commissioner").  AR 1-7, 13-

37.  After the Appeals Council denied review, Plaintiff sought review in this court pursuant to 42

U.S.C. § 405(g).  Presently before the Court are the parties' cross-motions for summary

judgment.[2]  For the reasons stated below, the Court GRANTS Plaintiff's Motion for Summary

---

[1] Because opinions by the Court are more widely available than other filings and this Order contains potentially sensitive medical information, this Order refers to Plaintiff using only her initials.

[2] Neither party complied with the Court's Order (dkt. 13) to file joint or separate statements of the

1    Judgment, DENIES the Commissioner's Motion for Summary Judgment, and REMANDS for

2    further administrative proceedings consistent with this order.[3]

3    ## II.    BACKGROUND

4        ### A.    The Five-Step Framework

5        Disability insurance benefits are available under the Social Security Act (the "Act") when

6    an eligible claimant is unable "to engage in any substantial gainful activity by reason of any

7    medically determinable physical or mental impairment . . . which has lasted or can be expected to

8    last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42

9    U.S.C. § 423(a)(1). A claimant is only found disabled if their physical or mental impairments are

10   of such severity that they are not only unable to do their previous work but also "cannot,

11   considering [their] age, education, and work experience, engage in any other kind of substantial

12   gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

13       The Commissioner has established a sequential, five-part evaluation process to determine

14   whether a claimant is disabled under the Act. *See Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir.

15   1999) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at steps one through

16   four, but the burden shifts to the Commissioner at step five. *Id.* "If a claimant is found to be

17   'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent

18   steps." *Id.*

19       At step one, the ALJ considers whether the claimant is presently engaged in "substantial

20   gainful activity." 20 C.F.R. § 404.1520(a)(4)(i).[4] If the claimant is engaged in such activity, the

21   ALJ determines that the claimant is not disabled, and the evaluation process stops. *Id.* If the

22   claimant is not engaged in substantial gainful activity, the ALJ continues to step two. *See id.*

23       At step two, the ALJ considers whether the claimant has "a severe medically determinable

24   physical or mental impairment" or combination of such impairments that meets the regulations'

25   _____

26   Administrative Record. The parties and their counsel are admonished to comply with the Court's
     orders in all future cases.

27   [3] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C.
     § 636(c).

28   [4] The Court cites the regulations applicable to disability insurance benefits applications because
     the parallel SSI regulations are virtually identical.

twelve-month durational requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). An impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, disability benefits are denied. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that one or more impairments are severe, the ALJ proceeds to the next step. *See id.*

At step three, the ALJ compares the medical severity of the claimant's impairments to a list of impairments that the Commissioner has determined are disabling ("Listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If one or a combination of the claimant's impairments meets or equals the severity of a listed impairment, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). Otherwise, the analysis continues. *See id.*

At step four, the ALJ must assess the claimant's residual functional capacity ("RFC") and past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The RFC is "the most [a claimant] can still do despite [that claimant's] limitations . . . based on all the relevant evidence in [that claimant's] case record." 20 C.F.R. § 404.1545(a)(1). The ALJ then determines whether, given the claimant's RFC, the claimant would be able to perform their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). If the claimant is able to perform their past relevant work, then the ALJ finds that they are not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is unable to perform their past relevant work, then the ALJ proceeds to step five. *See id.*

At step five, the Commissioner has the burden to "identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite [the claimant's] identified limitations." *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)). If the Commissioner meets this burden, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v). Conversely, the claimant is disabled and entitled to benefits if there are not a significant number of jobs available in the national economy that the claimant can perform. 20 C.F.R. § 404.1560(c).

**B.** **Supplemental Regulations for Determining Mental Disability**

The Social Security Administration has supplemented the five-step general disability evaluation process with regulations governing the evaluation of mental impairments at steps two and three of the five-step process. *See generally* 20 C.F.R. § 404.1520a. First, the Commissioner must determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Next, the Commissioner must assess the degree of functional limitation resulting from the claimant's mental impairment with respect to the following functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. §§ 404.1520a(b)(2), (c)(3). Finally, the Commissioner must determine the severity of the claimant's mental impairment and whether that severity meets or equals the severity of a mental impairment listed in Appendix 1. 20 C.F.R. § 404.1520a(d). If the Commissioner determines that the severity of the claimant's mental impairment meets or equals the severity of a listed mental impairment, the claimant is disabled. *See* 20 C.F.R. § 404.1520a(a)(4)(iii). Otherwise, the evaluation proceeds to step four of the general disability inquiry. *See* 20 C.F.R. § 404.1520a(d)(3).

Appendix 1 provides impairment-specific "Paragraph A" criteria for determining the presence of various listed mental impairments, but all listed mental impairments share certain "Paragraph B" severity criteria in common (and some have alternative "Paragraph C" severity criteria). *See generally* 20 C.F.R. § 404, Subpt. P, App. 1 at 12.00. Any medically determinable mental impairment—i.e., one that satisfies the Paragraph A criteria of one or more listed mental impairments—is sufficiently severe to render a claimant disabled if it also satisfies the general Paragraph B criteria, which requires that a claimant's mental disorder "result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id.* at 12.00(A)(2)(b). A claimant has a "marked" limitation if the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." *Id.* at 12.00(F)(2)(d). A claimant with an "extreme" limitation is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.* at 12.00(F)(2)(e).

This evaluation process is to be used at the second and third steps of the sequential

evaluation discussed above.  Social Security Ruling 96-8p, 1996 WL 374184, at *4 ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").  If the Commissioner determines that the claimant has one or more severe mental impairments that neither meet nor are equal to any listing, the Commissioner must assess the claimant's residual functional capacity.  20 C.F.R. § 404.1520a(d)(3).  This is a "mental RFC assessment [that is] used at steps 4 and 5 of the sequential evaluation process [and] requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments . . . . "  Social Security Ruling 96-8p, 1996 WL 374184, at *4.

### C.    Factual Background[5]

Plaintiff's impairments stem from two car accidents, in 2001 and 2004.  AR 483, 492-93.  She suffered a traumatic brain injury ("TBI") in the 2001 accident and was in a coma for months after the accident.  AR 492, 564.  She had brain swelling and had to have a shunt placed in her brain.  AR 492, 564.  As a result of this injury, Plaintiff suffers from cognitive deficits, particularly with her short-term memory and attention, and has frequent migraines.  AR 486-87, 503, 508, 564. Plaintiff also suffered damage to her right knee, leg, and ankle in the 2001 accident, and further damage to her right knee in the 2004 accident.  AR 483, 492-93.  She also has drop foot from the 2001 accident.  AR 492.[6]

For several years after her accidents, Plaintiff attempted to work and attend school.  She had graduated high school with a 3.6 GPA in 2000, one year before her first accident, and, after the accident, she earned an associate degree in general education in 2004 with a 2.8 GPA.  AR 126, 483-84.  She continued to take classes until at least 2009, although her college GPA dropped

---

[5] The Court assumes the parties are familiar with the Administrative Record and will not attempt to summarize the entirety of the record here.  Instead, this section is meant merely to provide context for the ensuing discussion about the particular issues raised by the parties.
[6] Plaintiff does not specifically challenge any of the ALJ's findings regarding her physical impairments, so the majority of the Court 's analysis will focus on her mental impairments and migraines.

to 2.1 and she had to re-take multiple classes because of her memory problems. AR 126, 483. As of 2014 she was 32 hours short of a bachelor's degree. AR 484. Plaintiff also continued working after her accidents. From the time of her first accident in 2001, to her alleged onset date in 2014, Plaintiff estimated that she tried working at well over 30 different jobs, but testified that she was fired from every single one of them because of her memory problems. AR 43-47, 483-84, 492.

### 1. Medical Opinions

In September 2014, shortly before the alleged onset date, Plaintiff was referred to Dr. Duffy for a neuropsychological evaluation as part of an attempt at vocational rehabilitation. AR 482. Dr. Duffy performed a variety of cognitive, psychological, and neuropsychological assessments of Plaintiff. AR 482-83. Dr. Duffy found that Plaintiff scored in the average range for intelligence when compared to others her age, although she scored in the low average range when compared to others her age with three years of college courses. AR 485-86. Dr. Duffy also found deficits in Plaintiff's memory, attention, concentration, and ability for abstraction. AR 486-87. He also diagnosed Plaintiff with a personality disorder. AR 487-88.

Based on this testing, Dr. Duffy found that Plaintiff faced "substantial impediments to employment," including her difficulties with memory, attention, concentration, planning, and problem-solving. AR 488. These difficulties meant that she would need "increased time and attention to learn complex tasks and new work skills" and she would need to avoid work that required a "fast sustained pace of performance." AR 488-89. Because of these impediments, Dr. Duffy opined that he did not think Plaintiff was a good candidate for full-time independent employment. AR 489. Instead, he believed she should apply for Social Security disability benefits and said he would be "quite surprised" if she was not eligible for benefits. AR 488. If she had to work, Dr. Duffy believed "it would need to be in a job setting where the pace is slower, tasks are less demanding, there is more routine and supervisors and coworkers who would understand and make allowances for her mistakes." AR 489. Dr. Duffy was "hard-put to think of jobs that would be appropriate for her, given her neurocognitive impairments." AR 489.

Two years later, in November 2016, Plaintiff underwent two consultative examinations in connection with her application for disability benefits. AR 492-96, 499-505. Dr. Benrazavi

performed an internal medicine evaluation, and Dr. Samuelson performed a psychological evaluation. AR 492-96, 499-505.

Dr. Benrazavi opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk up to four hours out of an eight-hour workday, and sit up to six hours. AR 495. Dr. Benrazavi also recommended the use of an AFO to prevent falls, and limited walking on uneven ground, climbing, and balancing. AR 495.

Dr. Samuelson performed a psychiatric examination of Plaintiff and found deficits in Plaintiff's memory and attention. AR 503. Dr. Samuelson also noted that Plaintiff had disinhibited speech, had difficulty answering questions, and became off task and rambled on about different subjects during the testing. AR 502. Based on these noted deficits, Dr. Samuelson opined that Plaintiff would have moderate difficulty performing simple and repetitive tasks and marked difficulty performing complex and detailed tasks. AR 504. Dr. Samuelson also opined that Plaintiff would have marked difficulty with: (1) working with the public; (2) working with supervisors and co-workers; (3) maintaining attention, concentration, persistence, and pace; (4) associating with day-to-day work activity, including attendance and safety; (5) accepting instructions from supervisors; (6) ability to maintain regular attendance in the work place and perform activities on a consistent basis; and (7) ability to perform work activities without special or additional supervision. AR 504-05. Dr. Samuelson therefore found that Plaintiff is "not able to work for a sustained period of time" due to her symptoms and "would not be appropriate in a work setting with the exception of a structured setting with professionals trained to manage disabled brain injured employees." AR 505.

In September 2017, Plaintiff's treating neurologist, Dr. Ferrer, referred plaintiff to Dr. Crimmins for a neuropsychological evaluation. AR 125-31, 566.[7] In December 2017, Dr.

---

[7] Dr. Ferrer's referral and summary of Dr. Crimmins's findings were in the record reviewed by the ALJ. AR 561, 566. Dr. Crimmins' actual report was not, but Plaintiff submitted the report to the Appeals Council prior to the Appeals Council denying review. AR 2, 125-31. The Appeals Council found that there was not a reasonable probability that the report would have changed the outcome of the decision. AR 2. Accordingly, this Court considers Dr. Crimmins' report part of the record while reviewing whether the ALJ's findings are supported by substantial evidence. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that

Crimmins conducted numerous tests on Plaintiff, and found that Plaintiff's performance was in the low average range for a simple attention task and in the mild deficit range for a more difficult task of attention/concentration, visual scanning, working memory and mental flexibility. AR 129. Dr. Crimmins also found a mild deficit in Plaintiff's performance on a more difficult task requiring attention, concentration, and motor speed. AR 129. Her ability to learn and recall a list of unrelated words was in the severe range. AR 129. Her memory for new verbal information in the context of a story was in the low average range, but her ability to recall that information after 30 minutes was in the moderate deficit range. AR 129. She also showed mild to severe deficits on visual learning tasks, abstract reasoning tasks, and problem-solving tasks. AR 129. On some other tests of memory and concentration, Plaintiff scored in the average or low average range. AR 129. Dr. Crimmins also noted that Plaintiff had "marked difficulty w[ith] comprehension" and repeatedly asked questions about what had just been said or what Plaintiff was supposed to be doing. AR 126. Dr. Crimmins' found Plaintiff could "track a simple, linear conversation but became notably confused with compound interrogatives." AR 126.

A couple of months later, in February 2018, Dr. Ferrer, filled out a Mental Impairment Questionnaire about Plaintiff. AR 539-44. Dr. Ferrer stated that Plaintiff has impairments in her ability to learn and retain information, and that she may have difficulty achieving higher education or performing a demanding job with significant responsibility. AR 540. Dr. Ferrer opined that Plaintiff was "[l]imited but satisfactory" or "[s]eriously limited" for most areas of mental functioning. AR 541-42.

### 2. Plaintiff's Testimony

In her function report, Plaintiff stated that she is unable to work because of her short-term memory loss, inability to stand or walk long distances due to her knee injuries, and her frequent trips and falls caused by her drop foot. AR 382. She stated that she is able to prepare simple meals that take 15 to 20 minutes to prepare. AR 384. She can dust, vacuum, and clean bathrooms as long as she can do so at her own pace. AR 384. These chores normally take her 15 to 30

United States District Court
Northern District of California

evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.").

minutes each.  AR 384.  If they take longer, she usually has to stop and rest her knee.  AR 384.

She cannot do yard work.  AR 385.  She can shop for clothes, shoes, personal care, and a short list

of groceries once or twice a week for 15 to 20 minutes each time.  AR 385.  She has trouble

keeping track of her finances because of her memory problems.  AR 385-86.  She checked boxes

indicating her conditions affect her ability to lift, squat, bend, stand, walk, kneel, talk, climb stairs,

remember things, complete tasks, concentrate, and follow instructions.  AR 387.  She can walk for

a half-mile before needing to rest and stretch for five to 10 minutes.  AR 387.  She sometimes

finishes what she starts, and can follow written instructions pretty well, but has trouble following

spoken instructions, although if she takes notes on the instructions, she is usually able to complete

the task.  AR 387.  She does not handle stress well. AR 388.

In terms of daily activities, Plaintiff said that she watches tv, researches various issues on

the internet, goes to live music events, talks to her friends, and goes to the gym to use the elliptical

or recumbent bike.  AR 383, 386.  Her conditions have affected all of these activities.  She no

longer watches documentaries because she cannot remember what she learns from them.  AR 386.

She often researches the same things on the internet because of her memory issues.  AR 386.  She

used to love dancing, but now can only attend live music events if she can sit.  AR 386.  She has

problems with her friends and family because she forgets conversations she had with them.  AR

387.

At the hearing, Plaintiff also testified that she suffered a "weeklong extreme crazy

migraine" in 2014, after she moved to California, and that her migraines were now "constant" and

getting worse.  AR 47, 51, 53, 55.  She also said that her right knee and ankle problems made it

impossible for her to walk, so she had surgeries on both of them, but her left knee was now also

shot from compensating for her right leg problems.  AR 48-49.  She said that she tried to help her

musician boyfriend with his social media, but sometimes she was unable to complete it.  AR 54.

### D.    The ALJ's Decision

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity

since the alleged onset date.  AR 18.

At step two, the ALJ found that Plaintiff has the following severe impairments: traumatic

9

brain injury, cognitive disorder, foot drop, osteoarthritis, status-post right knee replacement, status-post right tibia and fibula fracture, and migraines. AR 19.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any Listing. AR 19. In particular, the ALJ found that Plaintiff's impairments do not meet or equal or medically equal the criteria for Listings 1.02 (major dysfunction of a joint), 11.18 (traumatic brain injury), or 12.02 (neurocognitive disorders). AR 20. With regard to Listings 11.18 and 12.02, the ALJ considered the "paragraph B" criteria for mental impairments and found that Plaintiff had a mild limitation in understanding, remembering, or applying information, a mild limitation in interacting with others, a moderate limitation in concentrating, persisting, or maintaining pace, and a mild limitation in adapting and managing herself. AR 20-21.

At step four, the ALJ found that Plaintiff has the residual functional capacity to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant would be limited to walking and standing a total of four hours in an eight-hour workday; with occasional climbing of ladders, ropes, or scaffolds; and occasional climbing of stairs, crouching, crawling, and balancing. The claimant would be limited to occasional prolonged ambulation and uneven terrain with cane use on the left side. The claimant would be limited to simple, routine tasks; would be off task approximately five percent of the workday; could not perform fast-paced production assembly line type of work; and would be limited to occasional changes in the work setting. The claimant would need reminders two times per week to stay on task.

AR 21. In making this assessment, the ALJ did not fully credit Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms, finding that they were "not entirely consistent with the medical evidence and other evidence in the record." AR 22-23. The ALJ gave partial weight to the opinions of the medical consultative examiner, Dr. Benrazavi, and the neuropsychological evaluator, Dr. Duffy, some weight to the opinions in the Mental Impairment Questionnaire filled out by Plaintiff's treating neurologist, Dr. Ferrer, and little weight to the opinion of the psychological consultative examiner, Dr. Samuelson. AR 26-28. Based on this RFC, and the testimony of a Vocational Expert ("V.E.") at the hearing, the ALJ found that Plaintiff could not perform her relevant past work. AR 30, 62-64.

At step five, based on Plaintiff's RFC and the V.E.'s testimony, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including Cashier II, Storage Facility Rental Clerk, and Mail Clerk.  AR 30-31, 63-64.  The ALJ therefore found Plaintiff not disabled.  AR 31-32.

## III.    ISSUES FOR REVIEW

1.  Whether the ALJ erred by failing to provide specific and legitimate reasons for discounting the opinions of examining psychologist Dr. Samuelson and examining neurologist Dr. Duffy.

2.  Whether the ALJ erred by failing to account for Plaintiff's migraines in the RFC determination.

3.  Whether the ALJ erred by failing to provide specific, clear, and convincing reasons for discounting Plaintiff's subjective symptom testimony.

## IV.    ANALYSIS

### A.    Standard of Review

District courts have jurisdiction to review the final decisions of the Commissioner and may affirm, modify, or reverse the Commissioner's decisions with or without remanding for further hearings.  42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3).  When reviewing the Commissioner's decision, the Court takes as conclusive any findings of the Commissioner that are free of legal error and supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and that is based on the entire record.  *Richardson v. Perales*, 402 U.S. 389, 401. (1971).  "'Substantial evidence' means 'more than a mere scintilla,' but 'less than a preponderance.'"  *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (internal citation omitted).  Even if the Commissioner's findings are supported by substantial evidence, the decision should be set aside if proper legal standards were not applied when weighing the evidence.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).  In reviewing the record, the Court must consider both the evidence that supports and the evidence that detracts from the Commissioner's

conclusion. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).

### B. The ALJ's Consideration of Medical Opinion Testimony

#### 1. Legal Standard

The Social Security Act tasks the ALJ with weighing medical testimony and resolving conflicting and ambiguous medical testimony. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's discretion in this area is not entirely unfettered, however. The ALJ is generally required to give more weight to the opinions of physicians that treat the claimant than to the opinions of those who do not. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Likewise, the ALJ generally must give more weight to the opinions of physicians who personally examine the claimant, as compared to those who merely review the claimant's medical records. *Id.*

This does not mean, however, that the opinion of a treating physician is necessarily conclusive. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Instead, an ALJ may reject the opinion of a treating physician, even if the physician's opinion is uncontradicted, if the ALJ provides "clear and convincing" reasons for doing so. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by another doctor, the standard is lowered, and the treating physician's opinion may be rejected if the ALJ provides "specific and legitimate reasons supported by substantial evidence." *Id.* (internal quotation marks omitted). The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. "[B]road and vague" reasons do not suffice to meet the specific and legitimate standard. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).

The same standards apply when the ALJ wishes to reject the opinion of an examining physician. *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion alone is insufficient to reject the opinion of an examining or treating physician, though a non-examining physician's opinion may be persuasive when supported by other factors. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244

(9th Cir. 1998).

An opinion that is more consistent with the record as a whole generally carries more persuasiveness.  *See* 20 C.F.R. § 404.1527(c)(4).  On the other hand, brief, conclusory, contradictory, or unsupported opinions generally are less persuasive.  *See Tonapetyan*, 242 F.3d at 1149 ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings."); *Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017) ("A physician's opinion can be discredited based on contradictions between the opinion and the physician's own notes."); *but see Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996) ("Where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as a basis for the rejection of an examining physician's conclusions.").

### 2.  Analysis

Plaintiff challenges the weight the ALJ assigned to two examining physicians.  First, Plaintiff challenges the ALJ's assignment of "little weight" to Dr. Samuelson, the psychological consultative examiner.  Pl.'s Mot. (dkt. 21) at 8-14.  Second, Plaintiff challenges the ALJ's assignment of "partial weight" to the examining neurologist, Dr. Duffy.  Pl.'s Mot. at 14.  The Court reviews both of these determinations for "specific and legitimate reasons supported by substantial evidence" as both of these opinions were contradicted by the non-examining state agency physicians, who found Plaintiff less impaired.  *Lester*, 81 F.3d at 830-31 (internal quotation marks omitted); *see, e.g.*, AR 139-42.

### a.  Dr. Samuelson

Dr. Samuelson performed a psychological consultative examination of Plaintiff in November 2016 and opined that Plaintiff would have marked difficulty with almost every category of work-related functioning, except performing simple and repetitive tasks, where Dr. Samuelson found only a moderate impairment.  AR 504-05.  Dr. Samuelson's findings were based on her interview and psychiatric testing of Plaintiff, which showed impaired memory and attention, as well as disinhibited speech, difficulty answering questions, and a propensity to become off task and ramble about different subjects during the testing.  AR 502-05.  Based on

13

these marked impairments in work-related functioning, Dr. Samuelson concluded that Plaintiff would be unable to work in a normal work setting. AR 505.

The ALJ afforded this opinion "little weight" for three reasons: (1) the ALJ found that Dr. Samuelson's conclusions were inconsistent with Dr. Samuelson's examination of Plaintiff; (2) the ALJ found that Dr. Samuelson's conclusions were inconsistent with the normal results from other mental status examinations ("MSEs") in the record; and (3) the ALJ found that Dr. Samuelson's conclusions were inconsistent with Plaintiff's activities of earning an associate degree, completing three years of college toward a bachelor's degree, working multiple full-time jobs, and moving from Florida to California. AR 27. The Court finds that none of these reasons satisfy the "specific and legitimate reasons supported by substantial evidence" standard.

First, the Court disagrees that Dr. Samuelson's conclusions were inconsistent with her examination of Plaintiff. AR 27. Dr. Samuelson explicitly linked the "marked" impairments she found with relevant findings from her examination (impaired memory and attention, disinhibited speech, distractibility, inability to stay on topic). AR 504-05. The ALJ's decision does not explain why the examination findings cited by Dr. Samuelson are insufficient to support her findings of marked impairment. Instead, the ALJ simply cites to other parts of the examination that were normal, without any explanation of how those normal findings are inconsistent with the limitations described by Dr. Samuelson. *See* AR 27 (citing coherent and organized thought processes, relevant and non-delusional thought content, "only mildly impaired memory,"[8] and normal concentration). The mere listing of other normal findings is insufficient to discount Dr. Samuelson's opinion. *Willig v. Berryhill*, No. 16-CV-03041-MEJ, 2017 WL 2021369, at *5 (N.D. Cal. May 12, 2017) ("The ALJ erred by not explaining how the normal findings were inconsistent with the abnormal findings in light of Plaintiff's underlying conditions, and how the abnormal findings in and of themselves were insufficient to support Dr. Marinos' conclusion that Plaintiff

---

[8] Dr. Samuelson did not characterize the results of the memory testing as "only mildly impaired" and the ALJ offered no reason for crediting the ALJ's own interpretation of the severity of memory impairment over the interpretation of Dr. Samuelson, a licensed professional. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

had 'work-preclusive mental limitations.'"); *see also Embrey*, 849 F.2d at 421 ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim."); *Ann Cox v. Colvin*, No. 15-CV-00190-JSC, 2015 WL 8596436, at *13 (N.D. Cal. Dec. 14, 2015) (finding the ALJ erred where "not only did the ALJ fail to provide his own interpretation of the evidence, he failed to specifically cite which work-preclusive limitation(s) were contradicted by Dr. Mandelbaum's observations.").

The Court also finds the ALJ's citation of normal results on other MSEs in the record insufficient to discount Dr. Samuelson's opinion. AR 27. The ALJ does not explain which of the normal results on these MSEs contradicts which of the limitations assessed by Dr. Samuelson. *See* AR 27. As discussed above, Dr. Samuelson's opinions were based on her findings of impaired memory and attention, disinhibited speech, distractibility, and an inability to stay on topic. AR 504-05. The MSEs cited by the ALJ do not contain detailed narrative statements, unlike Dr. Samuelson's examination, so they do not address the latter three findings. *See* AR 551, 555, 559, 562, 564. The only potentially contradictory findings from the other MSEs, therefore, are the findings of normal attention and "grossly normal" memory. *See* AR 551, 555, 559, 562, 564. But Plaintiff's memory and attention problems are well-documented throughout the record. *See, e.g.*, AR 129 (mild deficits on more difficult attention/concentration tasks, moderate deficits in the ability to recall new verbal information, severe deficits in the ability to learn and recall a list of unrelated words); 486 ("In terms of memory and learning, she is showing Below-Average to Significantly Deficient memory."); 486-87 (Below Average to Moderately Impaired scores on attention and concentration tasks); 516 (2/5 on Memory Test, 4/6 on Attention Test, summarized as "markedly limited short-term memory skills for age and gender which appears to negatively affect ability to live independently as well as to return to work").

In addition, Plaintiff's treating doctor, Dr. Ferrer, explicitly stated that one of the MSEs cited by the ALJ "may not be adequate to completely assess [Plaintiff's] cognitive condition." AR 27, 564, 566. Dr. Ferrer therefore ordered more complete testing, which showed the memory and

attention problems described above. AR 125-31, 561, 566. And the ALJ herself apparently relied on Dr. Samuelson's findings of impaired memory and attention in formulating Plaintiff's RFC. *See* AR 26 ("Dr. Samuelson's mental status exam demonstrated some deficit in memory . . . and concentration . . . . These results support the finding that the claimant's TBI and resulting neurocognitive disorder are severe impairments, and are consistent with the limitations assessed in the above RFC."). It is unclear how the ALJ could credit Dr. Samuelson's findings of impaired memory and attention while formulating Plaintiff's RFC, but then use MSEs that found no memory or attention deficits to discredit Dr. Samuelson's opinions. *See Ann Cox*, 2015 WL 8596436, at * 17 ("The ALJ cannot reject an opinion only to rely on it later in order to achieve a desired result.").

Lastly, the Court disagrees that Plaintiff's educational, work, and moving history after her 2001 accident undermine Dr. Samuelson's opinions. AR 27. The Court first notes that all of Plaintiff's educational and work activities occurred prior to her alleged onset date, some of them well before the onset date. AR 18, 23, 342-43, 367, 483, 501. None of these cited activities is sufficient to discount Dr. Samuelson's conclusions.

Starting with her educational history, the Court notes that Plaintiff obtained her associate degree in 2004, 10 years prior to the onset date, and the Court is unaware of any evidence that she took any classes after 2009, five years prior to the onset date. AR 483. The Court finds Plaintiff's ability to complete college coursework many years prior to the alleged onset date to contain very little probative value. Moreover, Plaintiff's educational history actually provides support for Dr. Samuelson's conclusions of marked limitations. It does not appear that Plaintiff was able to maintain a full college-level course-load: Plaintiff completed a two-year associate degree in four years,[9] then managed to complete another year of college courses over the next five years. *See* AR 483-84 (Plaintiff graduated high school in 2000, obtained her associate degree in 2004, took two more semesters of classes after transferring in 2008, and was 32 hours short of a bachelor's degree

_____

[9] It is unclear what portion of the associate degree was completed after Plaintiff's first accident, since Plaintiff graduated high school a year before the accident. AR 484. It is possible that she completed a year of the associate degree before the accident, meaning that, after the accident, she took three years to complete the second year of the associate degree.

in 2014).  Plaintiff's post-accident college GPA was significantly lower than her pre-accident high school GPA.  AR 126. And Plaintiff said that she had to re-take several classes because of her memory problems.  AR 126.  The ALJ's decision provides no analysis to support the conclusion that this level of college coursework is inconsistent with Dr. Samuelson's findings of marked impairments.

The ALJ's unsupported conclusion is not only in conflict with Dr. Samuelson's findings, since Dr. Samuelson was well aware of Plaintiff's educational history, *see* AR 501, but it is also in conflict with Dr. Duffy's findings.  Dr. Duffy was also aware of Plaintiff's educational history when he concluded that he did not think Plaintiff was a good candidate for full-time independent employment.  AR 483-84, 489.  In fact, Dr. Duffy explicitly addressed Plaintiff's capacity for higher education, finding that "[w]hile her grade equivalencies are generally good enough for her to be able to gain re-entry into college-level courses, she may be expected to learn at a slower than average rate compared to other college students at this point."  AR 486.  This conclusion is consistent with her history of completing college-level courses at a slow rate, with the need to re-take several classes.  AR 126, 483-84.  The ALJ's decision offers no reason to accept the ALJ's conclusion that Plaintiff's educational history is incompatible with marked impairments over the conclusions of two trained professionals.  AR 27; *See Embrey*, 849 F.2d at 421-22 ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

Turning to Plaintiff's work history in the years leading up to her alleged onset date, Plaintiff testified that she tried to work many jobs but was fired from all of them because of her memory problems.  AR 43-47, 483-84, 492.  Her difficulty working due to her memory problems is corroborated by letters from her former employers and parents.  AR 422-25, 427.  The ALJ gave these letters little or partial weight, in part because she found they were contradicted by the fact that Plaintiff had worked at a substantial gainful level for nearly six years total in the thirteen years between her 2001 car accident and her alleged onset date, including one job she worked for nearly two years.  AR 29.  But the ALJ also found later in the opinion that Plaintiff is no longer able to perform any of her past relevant work that rose to the level of substantial gainful activity.  AR 30,

59-63. This means either Plaintiff was not actually able to perform the demands of the work at the time (as Plaintiff has testified, AR 43-45) or her condition has worsened since then. Either way, if Plaintiff can no longer perform her past relevant work, then the fact that she may have been able perform that work in the past cannot be a basis to discount Dr. Samuelson's findings of marked impairments at this time.

Turning lastly to the fact that Plaintiff moved from Florida to California with her boyfriend, AR 518, the ALJ provides no explanation of what activities Plaintiff performed during this move, or how those activities are inconsistent with Dr. Samuelson's findings. AR 27. Accordingly, the Court finds this reason, as with the other reasons offered by the ALJ, insufficient to support discounting Dr. Samuelson's opinions.[10]

### b. Dr. Duffy

In September 2014, as part of Plaintiff's attempt to seek vocational rehabilitation, Dr. Duffy performed a neuropsychological evaluation of Plaintiff and found deficits in Plaintiff's memory, attention, concentration, and ability for abstraction. AR 486-87. Based on this testing, Dr. Duffy found that Plaintiff faced "substantial impediments to employment," and thought that she would not be a "good candidate for full-time independent employment" because he was "hard-put to think of jobs that would be appropriate for her, given her neurocognitive impairments." AR 488-89. Dr. Duffy also opined that he would be surprised if Plaintiff were not eligible for Social Security Disability benefits, and that if she had to work it would need to be in a setting where " the pace is slower, tasks are less demanding, there is more routine and supervisors and coworkers who would understand and make allowances for her mistakes." AR 488-89.

The ALJ gave Dr. Duffy's opinions partial weight. AR 27. The ALJ gave no weight to Dr. Duffy's opinions regarding whether Plaintiff would be eligible for Social Security Disability

---

[10] The Commissioner argues that the ALJ's decision should be upheld because the opinions of other doctors in the record contradict Dr. Samuelson's opinions. *See* Def.'s Mot (dkt. 24) at 17-19. The ALJ did not cite these other opinions as a reason to discount Dr. Samuelson's opinion, so these opinions cannot support the ALJ's decision. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ— not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

benefits, as eligibility for benefits is a question reserved for the Commissioner. AR 27 (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). The ALJ then gave some weight to Dr. Duffy's opinions about Plaintiff's limitations because they were "generally" supported by Dr. Duffy's examination, and were consistent with Plaintiff's educational, work, and moving history. AR 27.

The Court finds the ALJ erred in assessing Dr. Duffy's opinions. The ALJ is correct that whether the claimant is able to work is a question reserved for the Commissioner, and the ALJ therefore was not bound to accept Dr. Duffy's opinions about whether Plaintiff could sustain employment or was eligible for benefits. 20 C.F.R. § 404.1527(d). That does not mean, however, that these statements should be simply ignored, because they provide important context for Dr. Duffy's other opinions. *See Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) (finding the ALJ erred in not addressing an examining physician's opinion that the plaintiff's "combination of mental and medical problems makes the likelihood of sustained full time competitive employment unlikely" because that statement "was not a conclusory statement . . . but instead an assessment, based on objective medical evidence"). For example, Dr. Duffy's opinions about whether Plaintiff could perform full-time independent work inform his later statement that, if Plaintiff had to work, it would need to be in a setting with a slower pace, less demanding tasks, more routine, and supervisors and coworkers who would understand and make allowances for her mistakes. AR 488-89. The latter statement, in and of itself, does not define how slow the pace would need to be, how demanding the tasks could be, and how much routine, understanding, and allowance for mistakes would be needed. Knowing that Dr. Duffy was "hard-put to think of jobs that would be appropriate for [Plaintiff], given her neurocognitive impairments," AR 489, sheds light on the degree of limitation that Dr. Duffy found.

With that context in mind, the Court finds the ALJ erred by giving Dr. Duffy's statements about Plaintiff's limitations "some weight" without giving any explanation for why she did not give those statements full weight and without explaining how the ALJ's RFC was consistent with those statements. AR 27; *Reddick*, 157 F.3d at 725 (finding the ALJ meets the specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."). Most notably, it is not

clear whether the ALJ accounted for Dr. Duffy's opinion that Plaintiff would need supervisors and coworkers who would understand and make allowances for her mistakes. AR 489. Nothing in the RFC appears to account for this opinion, and the ALJ offers no explanation for whether she accepted and incorporated this opinion and if so, how, or if not, why not. AR 27. The Court finds this error warrants remand. *Reddick*, 157 F.3d at 725.

### C. The ALJ's Consideration of Plaintiff's Migraines

Plaintiff next challenges the ALJ's failure to incorporate any limitations in Plaintiff's RFC related to her migraine headaches. Pl.'s Mot. at 17-20. It appears that although Plaintiff has suffered migraines since her 2001 accident, AR 564, she did not specifically list migraines as a basis for her inability to work in her initial submissions to the Social Security Administration. *See* AR 354, 382, 403, 416. At the hearing, Plaintiff testified that, in 2014, shortly after she moved to California, she had a terrible migraine that seemed to last for a week, and that since that time, she has been dealing with constant, daily migraines that are getting worse. AR 47, 51, 53, 55. Plaintiff's medical records show that in September 2017, Plaintiff reported to Dr. Ferrer that she had migraines five to seven days per week but Excedrin was effective in treating them. AR 564. Over the course of the next year, Dr. Ferrer proceeded to try various medications to treat her migraines, which were at times somewhat successful. AR 549, 551, 553, 555, 556, 559, 561, 563, 564, 566.

The ALJ found that Plaintiff's migraines were a severe impairment, but then concluded that they "improved with medication." AR 19, 29. It does not appear as though the ALJ incorporated any migraine-related limitations in Plaintiff's RFC. *See* AR 21. After the ALJ's decision, Plaintiff submitted records to the Appeals Council showing that Plaintiff went to the emergency room in January 2019 complaining of a migraine that had lasted for three days. AR 84. She was treated with nonnarcotic medications and, a couple hours later, felt much better and was discharged. AR 87-88. After she continued to have headaches for the next three days, Plaintiff went to see Dr. Ferrer, who prescribed a short course of steroids and Botox injections.

AR 70-72, 74.[11]

Plaintiff argues that her medical records, including these 2019 records, show that her migraines were "intractable" and not improved by medication, and therefore the ALJ's failure to account for them in the RFC was error. Pl.'s Mot. at 17-20. The Court, however, finds that the evidence related to Plaintiff's migraines is ambiguous at best. Plaintiff apparently did not seek any treatment for her migraines until sixteen years after her 2001 accident and she did not initially cite migraines as a basis for her inability to work in her disability application. AR 354, 382, 403, 416, 564. Once Plaintiff did seek treatment for her migraines, Dr. Ferrer did at times note a concern that these migraines were "intractable," AR 551, 563, however, he also noted at various points that the migraines had improved, AR 549, 553, and neither he nor any other doctor identified work-related limitations arising from these migraines, AR 539-44; *see also* AR 130, 488-89, 495, 504-05. While the new records submitted to the Appeals Council show that Plaintiff suffered a migraine in January 2019 that appeared to last almost a week, none of those records indicate that Plaintiff is now likely to continue having such long-lasting migraines. AR 70-72, 74, 84, 87-88. Given this ambiguous evidence, the Court cannot say that the ALJ's determination that Plaintiff's migraines were improved by medication and did not warrant any limitations in Plaintiff's RFC was not supported by substantial evidence. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." (internal quotation marks omitted)).

### D. The ALJ's Consideration of Plaintiff's Subjective Symptom Testimony

#### 1. Legal Standard

In evaluating the credibility of a claimant's testimony, the ALJ is required to engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."

---

[11] The Appeals Council considered these records in determining not to review the ALJ's decision. AR 2. The Court therefore considers them as well in determining whether the ALJ's decision was supported by substantial evidence. *Brewes*, 682 F.3d at 1163.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted). At this step, the claimant is merely required to show that their impairment "could reasonably have caused some degree" of their symptoms. *Vasquez*, 572 F.3d at 591 (citation omitted). The claimant is not required to demonstrate that their impairment "could reasonably be expected to cause the severity" of the symptoms they allege. *Id.*

Second, if the claimant satisfies the first step and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of their symptoms by offering "specific, clear, and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.[12] "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014). These reasons must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing a claimant's credibility, the ALJ may consider the claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citation omitted).

### 2. Analysis

Plaintiff described, in both her function report and her hearing testimony, that she was unable to work due mainly to her short-term memory problems and her inability to stand or walk for long periods of time due to her knee and ankle problems and drop foot. AR 48-55, 382-89. The ALJ summarized this testimony, then concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, but her statements concerning

---

[12] The Commissioner states an objection for the record to the Ninth Circuit's "clear and convincing" standard but recognizes that this Court is bound by Ninth Circuit authority. *See* Def.'s Mot. at 22 n.5.

the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." AR 22-23. The ALJ therefore did not incorporate all of Plaintiff's alleged symptoms into the RFC determination. *See* AR 21, 29-30.

Since the ALJ did not identify any evidence of malingering, the ALJ was required to provide "specific, clear and convincing" reasons to support the decision to discount Plaintiff's subjective symptom testimony. *Lingenfelter*, 504 F.3d at 1036. The ALJ's decision offers three reasons to potentially meet this standard: (1) Plaintiff's daily activities, including her educational and work history, are inconsistent with her subjective testimony; (2) Plaintiff made inconsistent statements to her treatment providers regarding her alcohol use; and (3) the objective medical evidence in the record does not support Plaintiff's testimony. AR 25-26, 29-30.[13] The Court finds that none of these reasons are sufficient to meet the "specific, clear and convincing" standard.

First, the Court disagrees with the ALJ's conclusion that Plaintiff's subjective symptom testimony is inconsistent with her testimony regarding her daily activities and educational and work history. *See* AR 25-26, 20. In addition to her educational and work history, the ALJ cites the following activities as inconsistent with Plaintiff's subjective testimony:

> The claimant is independent in her personal hygiene and dressing. The claimant cleans her home "for a couple of hours" every morning. She prepares simple meals. She drives and shops for groceries weekly. She walks for exercise at the park once or twice a week, where she also socializes with friends. She tends a small vegetable garden. She goes to the gym where she rides a recumbent bicycle or uses the elliptical. She is involved in a romantic relationship and will go see her partner, who is a musician, perform.
>
> . . .
>
> With the help of reminder notes, she is able to manage her own medications. She manages her personal finances and pays her bills. The claimant watches television and uses the computer to do internet research and use email. She admitted that she can follow written

---

[13] The Commissioner's brief states that the ALJ also "explicitly considered . . . that Plaintiff's regular alcohol and marijuana abuse worsened her cognitive symptoms during portions of the relevant period" in weighing Plaintiff's testimony. Def.'s Mot. at 23. The only citation provided for this claim is a twelve-page range of the Administrative Record that contains the majority of the ALJ's decision. *See* Def.'s Mot. at 23-24 (citing AR 19-30). The Court's review of the ALJ's decision does not indicate that the ALJ invoked this as a reason to discredit Plaintiff's symptoms. In fact, the ALJ explicitly found that Plaintiff's substance abuse was not a severe impairment and was not a factor materially contributing to her disability. AR 19.

instructions and can follow oral instructions if she is allowed to take notes.

AR 25-26 (citations omitted).  At no point in the decision does the ALJ explain which of these daily activities contradicts which portions of Plaintiff's testimony or how.  *See* AR 25-26, 29-30.  This alone is basis for reversal.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) ("It's not sufficient for the ALJ to make only general findings; he must state which [symptom] testimony is not credible and what evidence suggests the complaints are not credible.").

In addition, the Court's review of the record does not find inconsistencies between Plaintiff's symptom testimony and her daily activities.  The Court has already addressed Plaintiff's educational and work history, and why that history is not necessarily inconsistent with Plaintiff's alleged short-term memory problems.  *See* § IV.B.2.a, *supra*.  As for the remaining activities, the ALJ's decision leaves out several important facts that explain how Plaintiff's activities are consistent with her symptom testimony.  For example, Plaintiff's function report says that when she cleans, each activity takes her between 15 and 30 minutes, and if they take longer, she has to take a break to rest her knee.  AR 384.  Likewise, Plaintiff says that she does not cook anything that takes over 15 minutes, because she cannot stand for long periods of time.  AR 384.  She limits her grocery shopping to a short list that takes 15 to 20 minutes to complete, and she says that using a grocery cart for support helps.  AR 385.  She drives occasionally, and not for long distances, because her knee and ankle will not allow her to drive long distances.  AR 57.  While she does walk to the park a couple times a week, she does not walk far because of her leg.  AR 53.  She socializes with her friends, but often has difficulties with them because she forgets what they told her.  AR 53, 387.  She can water vegetables on flat ground but cannot do any other work in the garden and she falls down a lot.  AR 396-97.  She only attends concerts where it is possible to sit down.  AR 386.  She needs both reminder notes and the assistance of friends or family to remember to take her medications.  AR 384.  She usually pays her bills late and cannot keep track of what she spends because of her memory problems.  AR 385.  She often watches reruns on tv and no longer watches documentaries because she cannot remember what she has watched.  AR 386.  She researches issues on the internet, but often researches the same issues repeatedly because of her memory problems.  AR 386.  These activities, viewed in context, are not inconsistent with

Plaintiff's testimony that she suffers from short-term memory loss and difficulty standing and walking due to her knee, ankle, and foot problems. AR 48-55, 382-89.

Second, the Court disagrees with the ALJ's conclusion that Plaintiff has given "conflicting reports regarding her alcohol use." AR 26. The ALJ correctly notes that, in September 2014, Plaintiff was wearing an ankle monitor to prevent her from drinking. AR 26, 484. Then, in November 2016, just over two years later, Plaintiff told Dr. Benrazavi that she did not drink, and told Dr. Samuelson that she had been sober for over two years. AR 26, 493, 501. Two months later, in January 2017, Plaintiff told her primary care provider that she drinks five to seven drinks per week. AR 26, 508. Almost two years later, in November 2018, Plaintiff told her doctor that she has two to three drinks per week. AR 26, 690.

While these reports indicate varying levels of alcohol consumption over time, none of them are inconsistent with each other. The only two reports that were given at the same time—the reports to Dr. Benrazavi and Dr. Samuelson—were consistent in that they both reported no current alcohol consumption. AR 493, 501. The only report that said anything about her past alcohol consumption, her report to Dr. Samuelson that she had been sober for over two years, was not inconsistent with the fact that, over two years earlier, she was wearing an ankle monitor. AR 484, 501. The mere fact that Plaintiff reported different levels of alcohol consumption at different times is not a basis to discount Plaintiff's testimony.

Third, the ALJ cited various medical findings as supposedly inconsistent with Plaintiff's testimony. AR 29-30. Most of these medical findings pertained to Plaintiff's physical impairments. The ALJ cited the fact that, after her knee surgery, Plaintiff reported that she was not having episodes of losing her balance and felt comfortable not using a cane. AR 29. The ALJ also cited various normal results on physical exams. AR 29-30.[14] But the ALJ did not explain in what way these medical findings were inconsistent with Plaintiff's testimony, *see* AR 29-30, and the ALJ had already found elsewhere in the decision that Plaintiff's knee and ankle injuries

---

[14] The ALJ also notes that the objective medical evidence shows that Plaintiff's migraines improved with medication. AR 29. As discussed above, the Court finds that the ALJ's decision not to include limitations in the RFC related to Plaintiff's migraines is supported by substantial evidence. *See* § IV.C, *supra*.

warranted exertional limitations, postural limitations, and the use of a cane, AR 21, 26. Given the ALJ's lack of specificity and apparent crediting of some degree of limitation caused by Plaintiff's knee and ankle injuries, these medical findings do not rise to the level of a "specific, clear and convincing" reason to discount Plaintiff's testimony. *See Dodrill*, 12 F.3d at 918 ("It's not sufficient for the ALJ to make only general findings; he must state which [symptom] testimony is not credible and what evidence suggests the complaints are not credible."); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) ("[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."). All of the ALJ's stated reasons for discounting Plaintiff's subjective testimony therefore fail and remand on this basis is warranted.

### E.    Remedy

A district court may "affirm, modify, or reverse a decision by the Commissioner 'with or without remanding the cause for a rehearing.'" *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)) (emphasis omitted). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). On the other hand, the court may remand for award of benefits under the "credit as true" rule where: (1) "the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) "there are [no] outstanding issues that must be resolved before a disability determination can be made" and "further administrative proceedings would [not] be useful"; and (3) "on the record taken as a whole, there is no doubt as to disability." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citations and internal quotation marks omitted); *see also Garrison*, 759 F.3d at 1021 (holding that a district court abused its discretion in declining to apply the "credit as true" rule to an appropriate case). The "credit-as-true" rule does not apply "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act," *Garrison*, 759 F.3d at 1021, or when "there is a need to resolve conflicts and ambiguities." *Treichler*, 775 F.3d at 1101.

Here, the parties agree that if the case is to be remanded, it should be remanded for further proceedings.  Pl.'s Mot. at 22; Def.'s Mot. at 27.  The Court will follow the parties' wishes and remand for further proceedings.

**V.      CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Summary Judgment, DENIES the Commissioner's Motion for Summary Judgment, and REMANDS for further administrative proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: May 17, 2021

_____
JOSEPH C. SPERO
Chief Magistrate Judge